UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:26-cr-00046-JRO-TAB |
| | ) | |
| PAUL MILTON, | ) | -01 |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING MOTION TO REVOKE DETENTION ORDER**

Before the Court is Defendant Paul Milton's motion to revoke the detention order issued by the magistrate judge. Dkt. [25]. Milton argues that GPS monitoring and third-party custodianship can adequately assure the Court of his presence at trial. Because this Court finds to the contrary, his motion is **DENIED.**

**I. FACTS**

The Court finds the following facts by a preponderance of the evidence. A grand jury indicted Milton on one count of unlawful possession of a firearm by a felon pursuant to 18 U.S.C. § 922(g)(1). Dkt. 1. If convicted, Milton faces a maximum penalty of fifteen years in prison and up to three years of supervised release. Dkt. 5.

As captured on security video, Milton fired a handgun into the air in downtown Indianapolis shortly after midnight on New Year's Day, January 1, 2026, while standing in a large parking lot filled with dozens of cars and with several pedestrians nearby. Dkt. 26-1. Indianapolis Metropolitan Police

Department officers responded to the scene within minutes and located shell casings at Milton's feet. Officers found cocaine in a nearby vehicle, which one of Milton's companions admitted to sharing among the group that evening. The Government alleges that Milton has previously been convicted of at least four felonies: rape in 2006 and failure to register as a sex offender in 2011, 2015, and 2020. Dkt. 1 at 1.

The facts discussed at Milton's detention hearing and in the pretrial services report, dkt. 18, which was admitted into evidence without objection at the hearing, dkt. 21, include the following: Milton is a lifetime resident of Indianapolis. From March 2025 until his arrest, he lived with his girlfriend, Oshiana Tyson, in Indianapolis. Milton does not have a passport and has never been outside the country. Prior to his arrest, Milton worked at Gleaners Food Bank through a temporary staffing company, which he believes would again assist him in finding employment upon his release. Tyson is willing to financially support Milton and allow him to live with her if he is released pending trial. Milton is the father of five children, including a seventeen-year-old daughter for whom he is the sole guardian.

The Government noted that U.S. Probation's pretrial services report identified Milton as a flight risk. It also identified Milton's history of probation and community corrections violations including failure to register as a sex offender, unauthorized leaves while on probation, failure to maintain a stable residence, absconding from electronic monitoring supervision, and drug screens

2

positive for THC.  Dkt. 18 at 3–4.  The Government characterized this as "a lack of respect for those that are supervising him when he is in the community."

At the conclusion of the detention hearing, Magistrate Judge Mark J. Dinsmore found that no conditions of release could reasonably assure Milton's appearance as required.  Dkt. 22 at 3.  The magistrate judge thus ordered Milton detained pending trial.  Dkt. 21.

Milton has filed a motion to revoke the detention order.  Dkt. 25.  The Court has considered Milton's motion and exhibits, dkt. 25, dkt. 25-1 through 25-3 (including Tyson's affidavit averring her willingness to serve as Milton's third-party custodian in the event of his pretrial release); the government's response and exhibit, dkt. 26, dkt. 27; the pretrial services report, dkt. 18; and the recording of the detention hearing on March 18, 2026.  Milton has not requested another detention hearing, *see* dkt. 25, and the Court has determined that no hearing is necessary.  Under Local Rules 1-1 and 7-1(c)(3), any reply brief Milton wished to file was due April 22, 2026.   Milton did not timely file a reply.  In accordance with the Court's obligation to rule on this matter promptly, 18 U.S.C. § 3145(b), the Court will proceed without the benefit of further briefing.

## II. LEGAL STANDARD

Upon a defendant's motion, the Court reviews a magistrate judge's detention order *de novo.  See, e.g., United States v. Langston*, No. 1:25-cr-00146-TWP-TAB, 2025 WL 2240459, at *3 (S.D. Ind. Aug. 6, 2025); *see also United States v. Portes*, 786 F.2d 758, 760 (7th Cir. 1985).  Congress instructs district judges to conduct this review "promptly."   18 U.S.C. § 3145(b).  When the

Government asks for pretrial detention on the basis of risk of non-appearance pursuant to 18 U.S.C. § 3142(b), it bears the burden of proving this risk by a preponderance of the evidence. *Portes*, 786 F.2d at 760.

## III. FACTORS CONSIDERED

The Court must consider the following four factors when determining the necessity of pretrial detention:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

## IV. DISCUSSION

This Court has considered the record and the evidence presented by the parties and concludes that the government has met its burden. In addition to

the facts summarized above, the additional facts recited below are found by a preponderance of the evidence.

## A.   Statutory Factors

### 1.   Nature and Circumstances of the Offense

Factor one—the nature and circumstances of the offense—weighs in favor of pretrial detention because Milton's alleged crime involves a firearm and the circumstances involved him shooting a firearm in the air in a heavily populated area while standing in a full parking lot with a controlled substance, cocaine, present.   Milton suggests that the Court should place little relevance on this factor because the government does not make a public safety argument against his pretrial release.   However, § 3142(g) does not leave this Court with discretion regarding which factors to weigh and which to disregard.   Instead, it sets forth the factors judges "shall . . . take into account."   *Id.*; *see also United States v. Wilks*, 15 F.4th 842, 844 (7th Cir. 2021) (reversing revocation of pretrial release where "the judge did not hew to the statutory framework in making the revocation decision.").

The nature and circumstances of Milton's charged offense thus support pretrial detention.

### 2.   Weight of the Evidence

Factor two—the weight of the evidence—weighs in favor of pretrial detention.   The evidence against Milton is strong.   Surveillance footage plainly captures Milton's crime and the troubling circumstances in which it was committed.   Dkt. 26-1.   Officers heard the gunshots he fired, immediately

responded to the scene of the crime, and found shell casings "at [Milton's] feet." Dkt. 26 at 1.  The surveillance footage leaves little room for reasonable doubt.

Milton's argument that this factor bears more on a public safety analysis than a flight risk analysis misses the point.  Dkt. 25 at 3.  Where the government's evidence against a defendant is weak, it is common sense that a defendant may prize the chance to appear at trial and clear his name.  On the other hand, where the evidence is strong—and likelihood of conviction thus high—a defendant's practical incentives to flee trial rather than face justice increase.

The weight of the evidence against Milton is strong and supports denial of his motion.

### 3.    Personal History and Characteristics

Factor three—Milton's personal history and characteristics—is the most complex both in the statute and in its application here.  Milton's family ties, community ties, low financial resources, and record of compliant court appearances all tip toward release, while his past conduct, unemployment, and substance use history all tip toward detention.

Most relevant is Milton's history of absconding from electronic monitoring supervision, the very thing he says will assure his presence at trial if released now.  Dkt. 25-1 at 1; Dkt. 25 at 1.  In 2016, while he was on electronic monitoring, Milton left his residence without authorization eight times over a four-day period.  Dkt. 25-1 at 1.  This included two overnight absences.  *Id.* Specifically, on July 29, 2016, Milton left his home around 10 p.m. and returned

at 10 a.m. the next day, and on July 31, 2016, Milton left around 11 p.m. and did not return by the time community corrections filed the notice of violation the next day. *Id.* Milton argues that he undertook these absences to secure a new job. The Court does not find this explanation plausible because job seekers typically do not look for work during the middle of the night.

Milton has accrued other community corrections violations based on an inability to maintain stable housing. In 2016, Milton's then-wife insisted he leave their shared apartment, depriving Milton of a permanent residence. Dkt. 25 at 5. Likewise, while on probation in 2021, Milton resided at his sister's house until she had him move out following an argument. *Id.*

Milton argues that he would achieve grater stability if released now because his girlfriend of three years has offered to allow him to reside with her and her seven-year-old daughter. Dkt. 25-3 ¶¶ 5, 7. Milton previously resided with this girlfriend, Oshiana Tyson, in the months between March 2025 and his January 2026 arrest. Dkt. 25 at 6. But if the Court authorized this arrangement, Milton would reside at a property where he could be asked to leave at any time. Such arrangements have twice failed Milton in the past, resulting in housing disruptions and community corrections violations. Milton's past conduct of absconding from electronic monitoring and struggling to maintain stable long-term housing supports pretrial detention.

Milton's employment history similarly supports detention. While a defendant with known, gainful work will especially benefit from pretrial release to support himself and his family, that does not apply to Milton. Milton's

7

temporary employment at Gleaners Food Bank via Reliable Staffing, an employment agency, ended when he was arrested for the instant offense.  Dkt. 18 at 2.  Before that, he was last employed at the Yard House restaurant from 2022 to 2023.  *Id.*  Milton hopes that Reliable Staffing will work with him again upon release, *id.*, but he is currently unemployed.  His hopes remain hypothetical at this point.  Milton's employment status tips in favor of detention.

Milton's history of substance use also supports detention.  Milton tested positive for THC while on probation in 2021.  *Id.* at 4.  And on January 1, 2026—when Milton fired his gun in a full parking lot—officers found cocaine in the vehicle Milton stood next to.  One of Milton's associates admitted the group had been sharing the substance that evening.  These instances of substance use in connection with probation violations—not to mention the underlying offense—support detention according to the statute.

On the other hand, Milton has strong ties to the Indianapolis community.  He has lived here all his life.  He has five children all living in the central Indiana area.  This includes his seventeen-year-old daughter, who is pregnant.  Milton is the sole guardian for this daughter, who is presently living with a family friend.  Milton's girlfriend of three years, Tyson, resides in Indianapolis.  These ties to Indianapolis suggest flight is less likely and support pretrial release.  On the other hand, Milton resided with Tyson and had all of these familial and community ties at the time he committed the offense alleged here, and these ties did not then restrain him from his reckless conduct.  Accordingly, the Court does not find that these ties are sufficient to deter his flight from trial.

In the same vein, Milton's lack of resources, including a lack of financial resources or a U.S. passport, would make flight logistically challenging. This favors pretrial release. Finally, Milton's previous record of attending required court hearings is a positive sign that supports release. Dkt. 25 at 2.

On balance, however, the Court concludes that factor three favors pretrial detention, especially given his history of absconding from electronic monitoring.

### 4.    Danger to Others

The government makes no argument that factor four—the danger release would pose to any person or the community—supports Milton's detention. The Court thus concludes that this factor favors release notwithstanding the fact that the circumstances of his charged offense—firing an illegally possessed handgun in a heavily populated area—suggests the Government could have argued Milton is a danger to others.

## B.    Milton's Proposed Release Conditions

Milton argues that his presence at future proceedings can be reasonably assured if he is (1) released on electronic GPS monitoring, and (2) released into the custody of his girlfriend, Tyson, as his third-party custodian. The Court weighs these options against the facts above and concludes that even these measures will not reasonably assure the Court of Milton's presence.

Milton's history of absconding from previous electronic monitoring is a difficult fact for him. He attempts to overcome it by arguing the prior absences were connected with his search for employment. As explained above, the Court finds this explanation implausible. Further, Milton is presently unemployed.

So, even crediting his job-hunting explanation for his overnight absences, the chance that history may repeat itself if he is released is high.

Milton also argues that Tyson will assure his presence at future court proceedings. Tyson works as a forklift operator in a warehouse, dkt. 25-3 ¶ 4, and as such she cannot guarantee that Milton will conform his conduct to the conditions of his release at all times. The Court also considers the fact that Milton has a history of disruption in shared living situations, as seen in 2016 with his ex-wife and 2021 with his sister. While Tyson states now that she will allow Milton to live with her, financially support him, and monitor his activity, *id.* ¶¶ 8, 9, 11, the Court is not satisfied that such an arrangement would be tenable.

## V. CONCLUSION

Giving all the statutory factors their due weight, the Court finds the government has shown by a preponderance of the evidence that there is no condition or combination of conditions that will reasonably ensure Milton's appearance at trial as required. Milton's motion to revoke his detention order, dkt. [25], is accordingly **DENIED.**

**SO ORDERED.**

Date: 4/23/2026

_____
Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

Scott Aaron Milkey
MCNEELYLAW LLP
SMilkey@McNeelyLaw.com

Nate Walter
DOJ-USAO
nate.walter@usdoj.gov